UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GERARD L. BROOKINS,

        Petitioner,

v.                                          Case No. 3:17-cv-169-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Gerard Brookins, an inmate of the Florida penal system, initiated this action on February 8, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Brookins challenges a 2009 state court (Duval County, Florida) judgment of conviction for home invasion robbery with a firearm or deadly weapon. Brookins raises four grounds for relief. See Petition at 5-10.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 18) with exhibits (Resp. Ex.). Brookins decided not to file a reply brief; instead, relying on his assertions and arguments as pled in his Petition. See Doc. 20. This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On August 26, 2008, the State of Florida (State) charged Brookins by way of amended Information with home invasion robbery with a firearm or deadly weapon. Resp. Ex. A at 13-14. Brookins proceeded to a jury trial, at the conclusion of which the jury found him guilty as charged. Id. at 74. On May 26, 2009, the circuit court adjudicated Brookins to be a habitual felony offender (HFO) and sentenced him to a term of incarceration of life in prison. Id. at 86-91, 97, 167-71.

Brookins appealed his conviction and sentence to Florida's First District Court of Appeal (First DCA). Id. at 105. In his amended initial brief, Brookins, with the assistantce of counsel, raised the following three grounds for reversal:  (1) the circuit court erred in allowing the State to make improper comments and argument during voir dire, opening statements, and closing arguments; (2) trial counsel was ineffective; and (3) the cumulative effect of the circuit court and State's errors required a retrial. Resp. Ex. G. The State filed an answer brief, Resp. Ex. H, and Brookins filed a brief in reply. Resp. Ex. I. On April 7, 2011, the First DCA per curiam affirmed Brookins' judgment and sentence without issuing a written opinion, Resp. Ex. J, and issued the Mandate on April 26, 2011. Resp. Ex. K.

On June 8, 2011, Brookins filed a pro se motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he argued his life sentence exceeded the statutory maximum penalty for his offense. Resp. Ex. P. The circuit court had yet to rule on the Rule 3.800(a) Motion at the time Respondents filed their Response, Resp. Ex. O, but the state court record reflects the

circuit court denied the motion on March 2, 2018. See State v. Gerard Brookins, 16-2008-CF-010468-CX (Docket # 340).

On March 6, 2013 and June 13, 2013, Brookins through two different attorneys, filed two separate motions for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. Q at 1-52. On January 13, 2015, the circuit court struck the motions and directed Brookins to file an amended motion, id. at 55-59, which Brookins filed, pro se, on March 6, 2015 (Rule 3.850 Motion). Id. at 63-99. In his Rule 3.850 Motion, Brookins asserted his counsel was ineffective for failing to: (1) object to the State's line of questioning during jury selection; (2) properly investigate his case; and (3) put the State's case through a true adversarial testing. Id. Brookins also alleged the cumulative effect of counsel's errors prejudiced him. Id. On February 1, 2016, the circuit court denied the Rule 3.850 Motion. Id. at 100-23. The First DCA per curiam affirmed the denial on May 31, 2016, without a written opinion. Resp. Ex. T. On June 10, 2016, Brookins filed a pro se motion for rehearing, Resp. Ex. U, which the First DCA denied on July 21, 2016. Resp. Ex. X. The First DCA issued the Mandate on August 8, 2016. Resp. Ex. Y. Brookins sought review with the Florida Supreme Court, but the court dismissed his appeal for lack of jurisdiction. Resp. Ex. Z.

Brookins also filed a pro se petition for writ of habeas corpus in the circuit court on December 3, 2015, in which he argued he received a disparate sentence compared to his co-defendant and the State vindictively prosecuted him. Resp. Ex. AA at 1-25. On September 14, 2016, the circuit court denied his petition, cautioned him against filing frivolous motions, and corrected a scrivener's error in the judgment and sentence form. Id. at 30-34. On September 19, 2016, the circuit court entered an amended judgment and

sentence. Resp. Ex. BB. The First DCA per curiam affirmed the denial of the petition without issuing a written opinion on August 8, 2017. Resp. Ex. FF. Brookins moved for rehearing on September 12, 2017, Resp. Ex. GG, which the First DCA denied on November 8, 2017. Resp. Ex. HH. The First DCA issued the Mandate on November 29, 2017. Resp. Ex. II.

On July 3, 2017, Brookins filed another pro se motion to correct illegal sentence pursuant to Rule 3.800(a), arguing count one was illegally enhanced from a first-degree felony to a first-degree felony punishable by life. Resp. Ex. JJ. On March 2, 2018, the circuit court denied the motion. Resp. Ex. KK. Brookins did not appeal. Resp. Ex. O.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [Brookins'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

[I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is
> doubly so." Id. (citations and quotation marks omitted). "The
> question is not whether a federal court believes the state
> court's determination under the Strickland standard was
> incorrect but whether that determination was unreasonable -
> a substantially higher threshold." Knowles v. Mirzayance, 556
> U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's deferential
> standard," then a federal court may not disturb a state-court
> decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at
> 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance,

556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of deference--this

one to a state court's decision--when we are considering whether to grant federal habeas

relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir.

2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

Brookins alleges that the circuit court denied his right to due process and an impartial trial as guaranteed under the Florida Constitution when it allowed the State to make improper comments and arguments during voir dire, opening statements, and closing arguments. Petition at 5. Brookins does not specify the comments he challenges except to allege the State discussed facts not in evidence, without identifying the particular facts, and vouched for the testimony of a witness, without identifying the objectionable comments. Id.

Respondents contend this claim is not cognizable in a federal habeas proceeding because Brookins' claim does not allege a violation of federal law or the United States Constitution. Response at 24-26. The Court agrees. Brookins has specifically alleged that this alleged error denied his right to an impartial trial and due process of law "under Article I, Section 9, 16 and 22 of the Florida Constitution." Petition at 5 (emphasis added). As Brookins has not alleged a federal claim here, he is not entitled to federal habeas relief. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Moreover, Brookins' claim here is conclusory in nature as he failed to direct the Court to the specific comments and arguments he challenges. Generalized and vague allegations such as those raised by Brookins in the instant Petition are insufficient to warrant relief. See Mayle v. Felix, 545 U.S. 644, 648 (2005) (noting that Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a detailed statement

that specifies all the grounds for relief and states facts in support of each ground); McFarland v. Scott, 512 U.S. 849, 856 (1994) (explaining that Rule 2(c) of the Rules Governing Habeas Corpus Cases mandates a heightened pleading requirement); Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (Rules Governing Section 2254 Cases in the United States District Court "mandate 'fact pleading' as opposed to 'notice pleading.'").

In any event, having reviewed the trial transcripts, the Court finds that the State presented substantial evidence of Brookins' guilt such that the Court is confident that even if any comments Brookins believes were improper were eliminated, he still would have been convicted. See Ruiz v. Sec'y, Fla. Dept. of Corr., 439 F. A'ppx 831, 834 (11th Cir. 2011) (noting that "[t]o determine whether a comment or series of comments were prejudicial, we weigh the nature and scope of the instances of misconduct against the evidence of guilt against the accused."). The record reflects that Brookins, Henry Hicks, and Nakia Bryant broke into Dr. Shelita McGowan's home while she was present there with her three-year old daughter and her fifty-five-year old mother. Resp. Ex. C at 190-216, 305-19. McGowan, who momentarily returned home to pick up her sick daughter for a doctor's visit, testified she was in the bathroom when she heard a "big boom." Id. at 192-94. McGowan was so concerned that she raced out of the bathroom without even pulling up her underwear and pants. Id. at 194. When she exited the bathroom, she observed the front door had been kicked in and Hicks was holding a gun to her mother's head. Id. Hicks commanded McGowan's mother to get on the floor and stop the child from screaming, at which point he then grabbed McGowan around the neck and pointed the gun at her temple. Id. at 199-202. Hicks repeatedly began to ask her "where is the money?". Id. At some point, Brookins entered the house and said "just tell us where the

money is, Doc, just tell us where the money is." Id. at 202. A traumatized McGowan told them her husband had a safe and led them to its location. Id. at 204. Brookins picked up the safe containing approximately $25,000 in cash as well as a smaller gun safe. Id. at 204-08. Brookins and Hicks then took McGowan out into the living room, where she saw a third individual, Bryant. While in the living room, Hicks told her not to call the police, destroyed her home phone, and smashed her head down on a glass table. Id. at 209-13. Eventually all three men fled the scene. Id. at 215-16.

Detective Tanya Fowler, the lead investigator, received an anonymous tip several days after the incident that identified Hicks as one of the people who robbed McGowan. Resp. Ex. D at 392-93. Based on this tip, Fowler compiled a photospread containing Hicks' picture and showed it to McGowan and her mother, with both positively identifying Hicks as the man who held the gun throughout the incident. Id. at 394-97. Fowler ultimately interviewed Hicks, who confessed to the crime and told her Brookins and Bryant committed the robbery with him. Id. at 398-400. Fowler then compiled two more photospreads, one containing the photograph of Brookins and the other Bryant. Id. at 401-04. McGowan positively identified both Brookins and Bryant. Id. Fowler obtained arrest warrants for both men and was able to arrest Bryant at his house, where police also found a gun with the same serial number as one of the guns stolen from McGowan's house. Id. at 404-07, 425-26. U.S. Marshals later arrested Brookins. Id. at 408.

McGowan made an in-court identification of Brookins as one of the robbers and testified that she got a good look at Brookins' face and was "100 percent" confident Brookins was the second man who entered her house. Resp. Ex. C at 202-03, 213-15, 271, 289. Notably, McGowan had surveillance cameras at her house that recorded the

incident, a copy of which was played for the jury and introduced as evidence. Id. at 217-18, 230-35. Although the quality of the footage was not such that positive facial identification could be made, it did show three men entering the house and those same three men leaving the house with the two safes. Id. The State also presented the testimony of Brookins' co-defendant, Bryant, who testified that Brookins, his cousin, came up with the robbery plan and recruited Bryant and Hicks to help him. Id. at 297, 305-10. According to Bryant, Brookins obtained the gun Hicks used during the robbery. Id. at 314. Bryant further testified that Hicks and Brookins entered the house and then exited with both safes. Id. at 317-19. After the robbery, Bryant stated that they all returned to Bryant's father's house, where Bryant lived and at which police ultimately arrested Bryant, where they divided the cash and guns. Id. at 320-25. Bryant claimed that Brookins took all the victim's guns but acknowledged one of the guns was recovered at his home. Id. at 325-27.

In all, the State provided eyewitness testimony from the victim as well as from a co-defendant. The victim positively identified Brookins in a photospread and in-court. Both co-defendants, Hicks and Bryant, confessed to the crime and implicated Brookins. A surveillance video of the incident was played for the jury that corroborated the victim and co-defendants' accounts. In light of this substantial evidence of Brookins' guilt, Brookins has failed to demonstrate how the unspecified comments tainted or otherwise prejudiced his trial. Accordingly, for these reasons, relief as to the claim in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Brookins avers that his trial counsel was ineffective for failing to:

Challenge pre-trial and in-court identification procedure; investigate; cross-examine state witnesses on criti[c]al issues; call critical witnesses; object to hearsay; object to other improperly introduced evidence including the 911 tape and surveillance video; impeach critical state witnesses regarding omissions in previous sworn testimony regarding critical and material issues going to the heart of the defense; present a defense; or pursue an alibi. Furthermore[,] counsel proceeded to trial without DNA results which could have exonerated Defendant. Counsel [failed] to object to opening/closing arguments.

Petition at 7. Notably, this is the extent of Brookins' discussion of this claim.

Respondents contend this claim is unexhausted. Response at 34-36. The record reflects that Brookins raised a substantially similar claim on direct appeal. Resp. Ex. G at 33-46. Under Florida law, "an ineffective assistance of counsel claim may be treated on the merits on direct appeal only in the 'rare' instance where (1) the ineffectiveness is apparent on the face of the record, and (2) it would be 'a waste of judicial resources to require the trial court to address the issue.'" Robards v. State, 112 So. 3d 1256, 1267 (Fla. 2013) (quoting State v. Barber, 301 So. 2d 7, 9 (Fla. 1974)). The record reflects that the First DCA did not issue a written opinion and nothing in the record supports a finding that any ineffective assistance of counsel claim was apparent on the face of the record. Resp. Exs. J; K. As such, the Court cannot "assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case." Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993). Therefore, Brookins did not exhaust his ineffective assistance of counsel claim by raising it on direct appeal. Id.; Robards, 112 So. 3d at 1267.

Brookins also raised a substantially similar claim as ground two of his original motion for postconviction relief. Resp. Ex. Q at 41-49. However, the circuit court struck

this postconviction motion with leave to amend. Id. at 55-59. In response, Brookins filed his pro se Rule 3.850 Motion, in which he did not include this claim. Id. at 63-99. Therefore, Brookins failed to exhaust this claim as he did not allow the circuit court or the state appellate court an opportunity to address the merits of the claim. See Baldwin, 541 U.S. at 29. Accordingly, the instant claim is unexhausted. Brookins has not alleged any cause or prejudice to overcome this procedural default. Likewise, he has not made a claim of actual innocence. As such, relief on this claim is due to be denied as it is unexhausted.

Nevertheless, even if exhausted, Brookins is not entitled to relief. First, the claim is due to be denied as conclusory because Brookins failed to provide sufficient factual details concerning counsel's alleged deficiencies and how those deficiencies prejudiced him at trial. See Mayle, 545 U.S. at 648; McFarland, 512 U.S. at 856; Borden, 646 F.3d at 810. Moreover, these claims are meritless. Concerning the victim's pre-trial and in-court identification of Brookins as one of the robbers, the record provides no basis for a claim that police lead or otherwise suggested that Brookins' picture was in the photospread. Resp. Ex. C at 213-15, 267-68, 273-74,283-85, 401-04. Moreover, the victim testified she was 100 percent sure of Brookins' identity because she got a good look at his face, id. at 202-03, 213-15, 271, 289; and she clearly and without hesitation identified him in court. Id. at 203. Counsel also vigorously cross-examined the states witnesses and impeached them with prior deposition testimony. Resp. Exs. C at 245-83, 328-51; D at 370-71, 386-87, 408-29. It is evident from counsel's questions during cross-examination that he investigated this case, as he impeached the witnesses with police reports and deposition testimony. Id. Likewise, the record reflects counsel argued the State failed to prove beyond a reasonable doubt that Brookins was one of the suspects.

Resp. Ex. D at 462-77. Concerning counsel's alleged failure to call witnesses, the record reflects that the circuit court discussed this strategic decision with Brookins during a colloquy regarding his right to testify at trial, and he agreed there were no defense witnesses he wanted to call, refuting his current claim. Id. at 445.

Finally, the Court finds that Brookins cannot demonstrate prejudice. As discussed above in the Court's analysis of Ground One, the State provided substantial evidence of Brookins' guilt. Based on the evidence presented, including the victim's eyewitness testimony and the co-defendants' confessions, the Court finds there is no reasonable probability the outcome of the trial would have been different. For the above stated reasons, relief as to the claim in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Brookins asserts that his trial counsel was ineffective for failing to be present at a critical stage of the proceedings. Petition at 8. Specifically, he avers that neither counsel nor someone from his office was present during the deposition of McGowan. Id.

Respondents contend that Brookins failed to exhaust this claim. Response at 49-50. The record reflects that Brookins raised a similar claim in his original postconviction motion. Resp. Ex. Q at 50-51. However, as previously noted, the circuit court struck this motion and gave Brookins leave to amend. Id. at 55-59. When Brookins amended his motion, he failed to include this claim, id. at 63-99; therefore, he did not fairly present it in state court and the claim is unexhausted. See Baldwin, 541 U.S. at 29. Brooks has not asserted cause or prejudice to overcome this procedural default and has not alleged a

fundamental miscarriage of justice. Accordingly, relief on this claim is due to be denied as it is unexhausted.

Nevertheless, even if Brookins properly exhausted this claim, it is meritless. The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (quoting United States v. Wade, 388 U.S. 218, 227-228 (1967)). However, Brookins has not cited any binding authority, and this Court is aware of none from the United States Supreme Court, holding that depositions are a critical stage of a criminal proceeding. As such, Brookins has failed to establish counsel's alleged deficiency was contrary to, or involved an unreasonable application of, clearly established Federal law. Moreover, Brookins cannot demonstrate prejudice. The record reflects that the victim and her mother were deposed on the same day, with both Brookins' counsel and Hicks' counsel present for the victim's mother's deposition but only Hicks' counsel was present for the victim's deposition. Resp. Exs. C at 285; E at 80-82. Although defense counsel was not present, Hicks' attorney posed adversarial questions about the facts of the case that Brookins' counsel could use at trial. Brookins has provided no allegations as to how counsel's absence prejudiced him or how the outcome of the trial would have been different had counsel been present. Nor could he. As explained above in the Court's analysis of Ground One, the State presented substantial evidence of Brookins' guilt, such that the Court is confident there is no reasonable probability the outcome of the trial would have been different had counsel been present at the deposition. In light of the above analysis, the Court finds that relief as to the claim in Ground Three is due to be denied.

**D. Ground Four**

In his final claim, Brookins argues that he received a disparate sentence from his co-defendant, although he does not specifically identify which co-defendant. Petition at 10. According to Brookins, he was the less culpable of the codefendants because he did not carry a gun, kick in the victim's door, threaten the victim, or take anything from the house. Id. Additionally, he claims he directed Hicks to not shoot the victim. Id.

Brookins raised a substantially similar claim in his petition for writ of habeas corpus filed in state court. Resp. Ex. AA at 4-13. In denying this claim, the circuit court explained:

> Upon a review of the record, the Court finds no manifest injustice occurred and Defendant's claim is without merit. First, Bryant entered a plea of guilty and testified during Defendant's trial. [S]ee Kight v. State, 784 So. 2d 396, 401 (Fla. 2001) ("[I]n instances where the codefendant's lesser sentence was the result of a plea agreement or prosecutorial discretion, this Court has rejected claims of disparate sentencing."). Second, the victim's testimony at trial revealed Bryant was the least involved perpetrator out of all three defendants. The victim testified Bryant did not try to get the safes out of the house and, when Hicks and Defendant returned to the living room area, Bryant appeared and indicated they should not kill the victim. All of this information supports the trial court's decision to sentence Bryant to a lesser sentence, considering the victim's testimony indicates that out of the three defendants, Bryant was the least culpable. See [Cardona v. State, 641 So. 2d 361, 365 (Fla. 1994)]. Accordingly, Defendant is not entitled to relief.

Id. at 31-32 (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. FF.

To the extent that the First DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brookins is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim here is meritless. The United States Supreme Court has held that the Eighth Amendment prohibits "sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284 (1983) (emphasis added). However, Brookins has not cited to and the Court has not found any United States Supreme Court cases holding that a more severe sentence imposed upon a less-culpable co-defendant violates the United States Constitution. As such, Brookins is not entitled to federal habeas relief on this claim. See Myers v. Inch, No. 3:18cv223-LC/CAS, 2019 WL 4229704, at *18 (N.D. Fla. May 14, 2019) (Report and Recommendation adopted 2019 WL 4221396 (N.D. Fla. September 5, 2019) (noting that "disparity between the sentence given Petitioner and the sentence given a codefendant who cooperated and testified is not a basis for habeas relief."); Butler v. Sec'y, Dep't of Corr., No. 6:13-cv-136-Orl-31GJ, 2014 WL 3721277, at *5 (M.D. Fla. July 28, 2014) ("A defendant cannot rely upon his co-defendant's sentence

---

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

as a yardstick for his own ....") (quoting <u>Lakoskey v. United States</u>, CIV. 07-3581(JNE), 2008 WL 4277714, at *4 (D. Minn. Sept. 15, 2008)).

Moreover, the record refutes Brookins' contention that he is less culpable than Bryant. While Brookins did not hold or use the gun during the robbery, he did obtain the gun. Resp. Ex. C at 314. Brookins actively searched for and took the two safes from the victim's house. <u>Id.</u> at 204-05. Bryant, who entered a guilty plea, testified that Brookins masterminded the robbery. <u>Id.</u> at 305-10. Notably and contrary to Brookins' allegation in this claim, Bryant, not Brookins, shook his head "no" as if telling Hicks not to shoot the victim. <u>Id.</u> at 212-13. Bryant further testified, and the victim's testimony and surveillance footage corroborates this testimony, that he remained outside of the home for most of the robbery and only barely entered the house's threshold once Brookins and Hicks had already obtained the safes. <u>Id.</u> at 211-13, 230-35, 317-19. Accordingly, based on this evidence, any claim of disparate sentencing is meritless, because Brookins was more culpable than Bryant. For the above stated reasons, relief as to Brookins' claim in Ground Four is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Brookins seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Brookins "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Brookins appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of October, 2019.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:    Gerard Brookins #J17098
      Anne Catherine Conley, Esq.